The STATE of Ohio, Appellee,

v.

URBIN, Appellant.

[Cite as *State v. Urbin,* 148 Ohio App.3d 293, 2002-Ohio-3410.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 01CA007846.

Decided July 3, 2002.

294

Gregory A. White, Lorain County Prosecuting Attorney, and Mary R. Evard, Assistant Prosecuting Attorney, for appellee.

William T. Doyle and James M. Kersey, for appellant.

WHITMORE, Judge.

{¶ 1} Defendant–appellant Vince Urbin has appealed from a judgment of the Lorain County Court of Common Pleas that found him guilty of two counts of having an unlawful interest in a public contract in violation of R.C. 2921.42(A)(1), one count of tampering with evidence in violation of R.C. 2921.12(A)(1), and one count of complicity to tampering with evidence in violation of R.C. 2923.03(A)(1) and R.C. 2921.12(A)(1). This court affirms.

I

{¶ 2} While serving as Mayor of Avon Lake, appellant was indicted on eleven criminal charges. Appellant was charged with theft in office in violation of R.C. 2921.41(A)(1), theft in violation of R.C. 2913.02(A)(2), three counts of having an unlawful interest in a public contract in violation of R.C. 2921.42(A)(1), three counts of tampering with evidence in violation of R.C. 2921.12(A)(1), complicity to tampering with evidence in violation of R.C. 2923.03(A)(1) and 2921.12(A)(1), election falsification in violation of R.C. 3599.30, and soliciting or accepting improper compensation in violation of R.C. 2921.43(A)(1). After a jury trial, appellant was found guilty of two counts of having an unlawful interest in a public contract, one count of tampering with evidence, and one count of complicity to tampering with evidence. Appellant has appealed the convictions, asserting seven assignments of error. For ease of discussion, the substantive factual history of this case will be divided into four sections which precede the appropriate assignment(s) of error.

II

Unlawful Interest in a Public Contract

{¶ 3} The evidence presented at appellant's trial established that appellant contracted to have two city events catered by the Fountain Bleau Party Center (the "Center").[1] The evidence also showed that at the time of the events, appellant's brother, Dan, was working for the Center and was attempting to purchase it.[2] James Weisbarth, one of the Center's owners, testified that Dan negotiated to purchase the Center prior to January 2000 and that the deal fell apart sometime after January 2000. It is undisputed that at the time of the events in question Dan was attempting to buy the Center.

{¶ 4} It is also undisputed that Dan was the manager of the Center in December 1999 until the spring of 2000. While Dan did not receive a salary from the Center until January 2000, Weisbarth testified that at the time of the events Dan was the sole manager of the Center. Dan's duties included handling the day-to-day running of the business, which included the hiring and firing of employees, payroll, scheduling employees, and paying distributors. Dan was also responsible for booking parties and the outside catering jobs. Trial testimony also established that Dan selected and ordered the company vehicle. Dan's son and wife were also employed by the Center.

---

1. One event was held on December 21, 1999, and the other occurred on January 1, 2000.

2. It is undisputed that appellant, as Mayor of Avon Lake, was a public official under R.C. 2921.42 and that his brother constitutes a member of his family under R.C. 2921.42.

{¶ 5} Appellant testified that he recognized that if his brother owned the Center he could not use it for city functions, but that he thought that since Dan was not an owner, no conflict existed. Appellant also testified that he attempted to have one of the parties at another location in Avon Lake but that party center was unavailable. Appellant stated that he did not hide the fact that the parties were catered by the Center, but he admitted that he did not inform the public that his brother was the manager of the Center and was attempting to buy it.

## Assignment of Error Number One

{¶ 6} "The trial court erred in failing to grant the appellant's motion under Crim.R. 29(A) for judgment of acquittal on the counts alleging having an unlawful interest in a public contract, as proscribed by [R.C. 2921.42], in that the evidence was not legally sufficient to support a conviction."

{¶ 7} In his first assignment of error, appellant has asserted that the trial court erred in denying his motion for acquittal under Crim.R. 29(A) because the evidence was insufficient to support a conviction for having an unlawful interest in a public contract. Specifically, appellant has argued that an "interest," as required by R.C. 2921.42, does not exist in this case.

{¶ 8} Pursuant to Crim.R. 29(A), a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether a conviction is supported by legally sufficient evidence, this court must decide "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; see, also, *State v. Wolfe* (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689. "In essence, sufficiency is a test of adequacy." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.

{¶ 9} Appellant was charged with violating R.C. 2921.42 for having an unlawful interest in a public contract. Pursuant to R.C. 2921.42, "[n]o public official shall knowingly * * * [a]uthorize, or employ the authority or influence of his office to secure authorization of any public contract in which he, a member of his family, or any of his business associates has an interest[.]" R.C. 2921.42(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 10} While the term "interest" is not statutorily defined, the Ohio Ethics Commission in discussing R.C. 2921.42 found:

{¶ 11} "[A]n employee is considered to have an interest in his employer's contracts if: (1) the employee takes part in contract negotiations; (2) his salary is

based on the proceeds of the contract; (3) he receives a share of the contract's proceeds in the form of a commission or fee; (4) his employment responsibilities include participation in the administration or execution of the contract; or (5) where the employee's tenure is dependent upon his employer receiving the award of such contract." Ohio Ethics Commission, Advisory Opinion No. 89–008.

{¶ 12} In 1992, the Ohio Ethics Commission clarified its definition of "interest" in relation to R.C. 2921.42 by stating that:

{¶ 13} "[A]n employee of a firm will be deemed to have an 'interest' in a public contract entered into by her employer * * * if any of the following circumstances apply: (1) the employee has an ownership interest in, or is a director, trustee, or officer of, her employer; (2) she takes part, as a firm employee, in contract negotiations or the application process; (3) her salary is based or dependent upon, or is paid from, the proceeds of the contract; (4) she receives a share of the contract's proceeds in the form of a commission or fee; (5) her responsibilities as an employee include participation in the administration or execution of the contract or she has the responsibility to oversee execution or administration of the contract; (6) the employing agency receives most or all of its funding from the contract, such that the establishment or operation of her employing agency is dependent upon receipt of the contract; or, (7) the creation or continuation of her employment is dependent upon her employer receiving the award of the contract." Ohio Ethics Commission, Advisory Opinion No. 92–002.

{¶ 14} In the case sub judice, the trial court used the Ohio Ethics Commission's definition of "interest" in its jury instructions. Appellant has not assigned such use as error. Therefore, the only issue before this court is whether sufficient evidence existed to support a conviction of having an unlawful interest pursuant to R.C. 2921.42 as that "interest" was defined in the jury instructions. The pertinent jury instruction is as follows:

{¶ 15} "A city mayor's brother has an improper interest in that city's public contract (1) if he receives or expects to receive a definite and direct financial benefit from the other party's participation in the city's public contract, or (2) if he has or expects to have a definite and direct responsibility for the other party's adoption or performance of the city's public contract. A city mayor's brother may have an improper interest in the city's public contract if, (a) he has an ownership interest in the company with which the city makes that public contract; or (b) he actively participates in that company's negotiations for that public contract; or (c) he has direct responsibility for that company's performance of that public contract." [3]

---

3. This court notes that the jury instruction mistakenly contains the term "improper interest" in relation to the mayor's brother. While appellant did object to the elements in the trial

{¶ 16}   This court concludes that, in construing the evidence in a light most favorable to the prosecution, the record demonstrates that a rational trier of fact could have found the essential elements of having an unlawful interest in a public contract proven beyond a reasonable doubt.   The evidence showed that appellant violated R.C. 2921.42 because he knowingly authorized two public contracts in which his brother had an interest.   While the record does not cite under which prong of the interest definition the jury categorized Dan's relationship to the Center, the record does clearly show an interest within the trial court's definition.   As manager of the Center, Dan had direct responsibility for the Center's performance of the contracts, that is, he was directly responsible for the hosting and catering of the events.   By all accounts, Dan ran the Center;  he was in charge of the day-to-day activities, including booking parties, outside catering, paying distributors, collecting fees, and employee scheduling and payroll.   Therefore, a rational trier of fact could find an interest as enumerated in the trial court's "interest" jury instruction.   Accordingly, the trial court properly denied appellant's Crim.R. 29(A) motion for acquittal.   Appellant's first assignment of error is overruled.

### Tampering with Evidence/Complicity to Tampering with Evidence

{¶ 17}   Appellant testified that he received a phone call from the prosecutor informing him that the police and/or prosecutor would be coming by his office to collect documents relating to his campaign finance and his charity, the Mayor's Ball. Appellant stated that he called his secretary and told her to cooperate with the police.   Appellant also testified that he told the prosecutor that it would take the weekend to gather the materials.

{¶ 18}   Appellant continued his testimony by explaining that when he returned to his office he told his secretary that the police were coming and asked her whether there was anything they should be concerned about the police seeing or anything he should look at.   He wrote his secretary a note asking her to put anything she did not want the police to see in a bag for him.   Appellant's secretary testified that he asked her whether she had anything that "need[ed] to be bagged."   She testified that she told him that she did not think they should do that and then showed him a computer disk.   Appellant took the disk from her and placed it in his jacket pocket and went upstairs to his office area.

court's interest instruction at trial, he did not object to the "improper interest" phrase; therefore the issue is waived on appeal.   Moreover, the error does not constitute plain error under Crim.R. 52(A) because it did not affect appellant's substantial rights.   The record establishes that the jury properly understood the definition of "interest" in the trial court's jury instruction.

{¶ 19}   Appellant's secretary called the police and told them he had taken the disk.   Sergeant Jack Hall testified that he was sent to appellant's office and that when appellant was asked about the disk he had taken from his secretary he denied knowing about the disk.   Hall testified that it was not until he elevated his voice and became upset, stating "[t]he disk that you took from your secretary downstairs after you had written her a note telling her to, if there was anything [that] needed bagged because you had previously told her that the police were on the way, * * * that disk," that appellant acknowledged knowing about the disk. After retrieving the disk from his jacket, appellant gave it to Hall. It is undisputed that neither a warrant nor a subpoena was issued for the disk.

{¶ 20}   Appellant testified that he took the disk only to see what was on it and that he was not going to keep it or attempt to impair the investigation.   Appellant stated that he was going to give the disk to the police after he looked at its contents.   Appellant also testified that he thought it was unreasonable for the police to take documents based on his secretary's phone call that said he was trying to hide information.   On cross-examination, Sergeant Hall testified that he had filed a grievance over vacation pay and that he was in negotiations with the city as a union representative, but he denied appellant's allegations that the investigation was the result of bias.

## Assignment of Error Number Two

{¶ 21}   "The trial court erred in failing to grant the appellant's motion under Crim.R. 29(A) for judgment of acquittal on the counts alleging tampering with evidence, as proscribed by [R.C. 2921.12(A)(1) ]."

## Assignment of Error Number Three

{¶ 22}   "The conviction of tampering with evidence, as proscribed by [R.C. 2921.12(A)(1) ], is against the manifest weight of the evidence."

{¶ 23}   In his second assignment of error, appellant has asserted that the trial court erred in denying his motion under Crim.R. 29(A) because the evidence was not sufficient to support a conviction for tampering with evidence.   In his third assignment of error, appellant has argued that the conviction is against the manifest weight of the evidence.

{¶ 24}   As this court discussed in considering appellant's first assignment of error, Crim.R. 29(A) requires a trial court to enter a judgment of acquittal if the evidence is insufficient to support a conviction for the offense.   "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion."   *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600, at 3, 2000 WL 277908.

{¶ 25} In determining whether a conviction is against the manifest weight of the evidence, this court must "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 26} When an appellate court reverses based on manifest weight, it acts in effect as a "thirteenth juror," setting aside the resolution of testimony and evidence as found by the trier of fact. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. This action is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant. *Otten,* 33 Ohio App.3d at 340, 515 N.E.2d 1009. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." *State v. Haydon* (Dec. 22, 1999), 9th Dist. No. 19094, at 14, 1999 WL 1260298, appeal not allowed (2000), 88 Ohio St.3d 1482, 727 N.E.2d 132. Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 27} Appellant was convicted of two counts of tampering with evidence under R.C. 2921.12. Pursuant to R.C. 2921.12(A)(1):

{¶ 28} "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

{¶ 29} "(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

{¶ 30} This court cannot conclude that, given the evidence before it, the jury created a manifest miscarriage of justice such that appellant's convictions must be reversed. After careful review of the entire record, weighing the evidence and all reasonable inferences, this court finds that the jury did not lose its way when it found that appellant tampered with evidence when, knowing that the police and/or prosecutor planned on visiting his office to collect documents relating to his charity and campaign finance, appellant took a computer disk from his secretary and placed it in his jacket pocket. The jury was in the best position to listen to and view the witnesses and adjudge their credibility to determine that appellant knowingly removed and concealed a "record, document, or thing" with the purpose to either impair its value or availability as evidence in an investigation or official proceeding. Based on the foregoing, this court cannot find that

appellant's conviction for tampering with evidence was against the manifest weight of the evidence. Therefore, appellant's third assignment of error is overruled.

{¶ 31} This court has previously noted that "[b]ecause *sufficiency* is required to take a case to the jury, a finding that a conviction is supported by the *weight* of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis sic.) *State v. Roberts* (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4, 1997 WL 600669. Accordingly, having found that appellant's conviction for tampering with evidence was not against the manifest weight of the evidence, this court need not discuss further his challenge to the sufficiency of the evidence. Therefore, appellant's second assignment of error is overruled.

### Assignment of Error Number Four

{¶ 32} "The trial court erred in failing to grant the appellant's motion under Crim.R. 29(A) for judgment of acquittal on the counts alleging complicity with tampering with evidence, as proscribed by [R.C. 2921.12(A)(1)], in that the evidence was not legally sufficient to support a conviction."

{¶ 33} In his fourth assignment of error, appellant has argued that the trial court erred in denying his motion under Crim.R. 29(A) because there was not sufficient evidence to convict him of complicity to tampering with evidence. Appellant has asserted that he cannot be convicted of complicity without an accomplice. This court disagrees.

{¶ 34} As previously discussed, in order to grant an acquittal under Crim. R. 29(A) the record must show that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. R.C. 2923.03(A)(1) provides:

{¶ 35} "No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

{¶ 36} "(1) Solicit or procure another to commit the offense[.]"

{¶ 37} Therefore, this court must determine whether any rational trier of fact could have found that appellant solicited or procured another to tamper with evidence.

{¶ 38} This court finds that any rational trier of fact could have found the essential elements of complicity to tampering with evidence proven beyond a reasonable doubt. Any rational trier of fact could view appellant's actions and comments towards his secretary regarding the disk as solicitation to destroy, alter, conceal, or remove evidence. It is undisputed that appellant asked his

secretary whether there was anything they should be concerned about the police seeing and that should be "bagged." She showed him the disk and he placed it in his jacket. Therefore, based on appellant's behavior towards his secretary, sufficient evidence existed to support a conviction. Further, appellant's argument that he cannot be convicted of complicity without an accomplice is without merit. Pursuant to R.C. 2923.03(B), "[i]t is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender." Accordingly, appellant's fourth assignment of error is overruled.

## Assignment of Error Number Five

{¶ 39} "The convictions for tampering with evidence and complicity with tampering with evidence should have been merged."

{¶ 40} In his fifth assignment of error, appellant has claimed that his convictions for tampering with evidence and complicity to tampering with evidence should have been merged because the offenses are the same and he can be sentenced for only one of them.

{¶ 41} The Double Jeopardy Clauses of the United States and Ohio Constitutions protect criminal defendants from multiple punishments for the same offense. *State v. Rance* (1999), 85 Ohio St.3d 632, 634, 710 N.E.2d 699. R.C. 2941.25 reinforces the principles and concepts contained in the Double Jeopardy Clause. See *State v. Fields* (Aug. 9, 2000), 9th Dist. No. 99CA0062, at 8, 2000 WL 1124071, appeal not allowed (2000), 90 Ohio St.3d 1489, 739 N.E.2d 815. R.C. 2941.25 provides:

{¶ 42} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶ 43} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶ 44} Crimes are allied offenses of similar import if the elements of the crimes " 'correspond to such a degree that the commission of one crime will result in the commission of the other[.]' " *State v. Jones* (1997), 78 Ohio St.3d 12, 13, 676 N.E.2d 80, quoting *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816. If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends and the multiple convictions are permitted. R.C. 2941.25(B); See *State v. Nixon* (Apr. 25, 2001), 9th Dist. Nos. 00CA007638

and 00CA007624, at 23–24, 2001 WL 422885. Further, when comparing the elements of the offenses, the "elements should be compared in the statutory abstract." *Rance*, 85 Ohio St.3d at 637, 710 N.E.2d 699.

{¶ 45} Accordingly, this court must first determine whether, in the abstract, the elements of tampering with evidence and complicity to tampering with evidence correspond to such a degree that the commission of one crime will result in the commission of the other, and therefore, the crimes are of similar import. *Rance*, 85 Ohio St.3d at 636, 710 N.E.2d 699. If they are offenses of similar import, then this Court must determine whether appellant committed those offenses separately or with a separate animus. Id. If the tampering with evidence and complicity to tampering with evidence were committed separately or with a separate animus, then appellant can be punished for both. R.C. 2941.25(B); *Jones*, 78 Ohio St.3d at 13–14, 676 N.E.2d 80. "No one factor is dispositive in determining whether there were separate acts or animi." *Nixon* at 24, citing *Jones*, 78 Ohio St.3d at 14, 676 N.E.2d 80.

{¶ 46} This court finds that appellant's motion to merge the convictions for tampering with evidence and complicity to tampering with evidence was properly denied. Tampering with evidence involves the defendant *personally* altering, destroying, concealing, or removing a record, document, or thing. Complicity to tampering with evidence entails a defendant soliciting or procuring *another person* to tamper with evidence. A review of the offenses establishes that the elements constituting tampering with evidence are different than the elements constituting complicity to tampering with evidence. There can be tampering with evidence without complicity to tampering with evidence and vice versa; the commission of the one offense is not incidental to the commission of the other. Once the defendant solicits another person to tamper with evidence, the complicity to tamper with evidence is complete. A defendant's subsequent conduct that gives rise to a different charge is a separately identifiable crime. Therefore, tampering with evidence and complicity to tampering with evidence are of a dissimilar import and appellant was properly convicted of both crimes. Accordingly, appellant's fifth assignment of error is overruled.

## Evidence of Other Acts

{¶ 47} During its opening statement, the state presented its case by discussing the many facts of the case, the eleven charges that were against appellant, and its arguments concerning appellant's guilt. The state commented on the issue of public versus private records and maintaining campaign records on a city computer, but then told the jury that it would not have to address such an issue. Appellant objected to the state's comments. The court overruled the objection and informed the jury that the state was only presenting its arguments and that

the statements were not to be taken as fact or evidence of appellant's guilt. The state continued its opening statement by clarifying that its comments were made in relation to records involved in the theft and tampering with evidence charges.

{¶ 48} During the state's examination of appellant's secretary, it asked her about using city time on a city computer for campaign purposes. Appellant objected and the examination continued without a ruling from the court. The state also asked a city worker about city employees and campaign fund functions. Appellant objected and the court overruled the objection.

{¶ 49} While questioning Mr. Hamilton, a city worker, about campaign signs, the state asked him whether he was paid to put signs together on city time. Appellant objected and the court instructed the jury that putting campaign signs together on city time was not a charge in this case and therefore they should not consider the statements as evidence. A discussion was then held in chambers outside the hearing of the jury. After voicing his objection, appellant requested a mistrial. The state responded that it was presenting the issue in response to appellant's argument that the case was based on vindictive prosecution. The state argued that it was only showing that other charges could have been brought. The court sustained appellant's objection, denied appellant's request for a mistrial, and gave the following instruction to the jury:

{¶ 50} "Ladies and gentlemen, as I was about to say before, we are here concerned with certain specific charges and whether there is or is not any basis for any other complaint is not before you and you should not consider it, so whatever was said here regarding any other activities that are not part of these charges, you should disregard and give no attention or weight for any purpose whatever."

{¶ 51} At the close of the case, appellant renewed his objections to the state's questions regarding "other acts." Specifically, in order to preserve the record, appellant objected to the state's questioning appellant about having campaign material on a city computer and working on his campaign at City Hall. Appellant argued that such questioning tainted the jury. The court responded that it had overruled the objection and explained:

{¶ 52} "The Court concluded that under Evidence Rule 404(B) and under Evidence Rule 403, that the evidence that you're concerned with was potentially relevant to counts six, seven, nine, and ten, those having to do with tampering with evidence and complicity to tampering with evidence, inasmuch as they would reflect upon the state of mind of Defendant Urbin. Further, the Court concluded that the probative weight of those was not substantially outweighed by it's [sic] prejudicial evidence effect under the circumstances of this case and, therefore, the Court permitted that evidence."

## Assignment of Error Number Six

{¶ 53} "The trial court erred in allowing the prosecuting attorney, over objection, to introduce evidence of other acts and crimes not specified in the indictment."

{¶ 54} In his sixth assignment of error, appellant has argued that the trial court erred in admitting evidence relating to other acts committed by appellant. Appellant has asserted that the trial court allowed the state to introduce improper evidence relating to his charity work and campaigning.

{¶ 55} "A trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion which materially prejudiced the objecting party." *State v. Smith* (Nov. 8, 2000), 9th Dist. No. 99CA007399, at 6–7, 2000 WL 1675052, citing *Williams v. Oeder* (1995), 103 Ohio App.3d 333, 341, 659 N.E.2d 379, appeal not allowed (1995), 74 Ohio St.3d 1422, 655 N.E.2d 741. An abuse of discretion connotes an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 56} Evid.R. 404(B) governs the admissibility of other acts evidence:

{¶ 57} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 58} "[T]he improper use of other-acts evidence necessitates reversal when there is a 'reasonable possibility that the testimony contributed to the accused's conviction.'" *State v. Treesh* (2001), 90 Ohio St.3d 460, 483, 739 N.E.2d 749, certiorari denied (2001), 533 U.S. 904, 121 S.Ct. 2247, 150 L.Ed.2d 234, quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623.

{¶ 59} This court finds that the trial court did not abuse its discretion in allowing limited testimony concerning appellant's charity work and campaign finance. The trial court properly instructed the jury to disregard the questions, statements, and testimony that were not proper under Evid.R. 404. The trial court did not abuse its discretion when it determined that the other acts testimony concerning appellant's charity work and campaigning were admissible under Evid.R. 404 as possible proof of motive or intent for appellant's three tampering with evidence charges. This Court cannot find a reasonable possibility that the limited other acts testimony contributed to appellant's convictions,

especially since appellant was found not guilty of other charges that related to the other acts testimony. Accordingly, appellant's sixth assignment of error is overruled.

## Prosecutorial Misconduct

{¶ 60} A review of the transcript shows that both counsel for the state and appellant used various trial tactics and questioning techniques to argue their cases to the jury. While conducting the cross-examination of appellant, the prosecutor stated, "Some people think that there's a concept called 'surgical avoidance of a question' by shifting the answer slightly to another topic as a sign of deception." The trial court responded by sustaining an objection. The state continued its cross, asking appellant "Are you doing that to me sir?" After appellant asked the trial court if he should answer, the court reminded the parties that arguments are not appropriate in asking or answering questions. The issue arose again in appellant's cross-examination when the prosecutor stated, "So, again, you've avoided my question by substituting something else." The defense objected and the trial court sustained the objection. The trial court again reminded the parties to not to make comments and just ask questions.

{¶ 61} Later in appellant's cross-examination, the state asked "Did you see your lawyers ask the Judge to throw these charges out based on legal grounds?" The court quickly informed the jury to disregard the question and defense counsel asked for a sidebar, which was conducted in the judge's chambers. The defense formally objected to the state's question and requested a mistrial or a curative instruction. The state argued that its question was "a fair response to the entire defense tactic of this case and [encouraged] the Court to explain [to the jury] everybody's role" in the case. The court found that since the witness did not answer the question, "the prejudice that could result otherwise [was] not as great." The court denied the mistrial but gave the following curative instruction:

{¶ 62} "By your oath you agree that you will accept and apply the Judge's instructions about the rules of law. Jurors are not permitted to change the law, nor are they permitted to apply their own concept of what they think the law should be. On the other hand, the Judge has no authority to decide which witnesses to believe or which version of a disputed event is true. Therefore, you should disregard any impression you may have about the Judge's view of the facts. I've also instructed you, you are the sole judges of the facts and the weight of the evidence. And then I added, to weigh the evidence you must consider the credibility of the witnesses. To the extent that any question or any comment by any witness suggests that I have a view as to which version of disputed facts is correct, they are wrong. I have no such view. I don't have authority to have a view and I don't have such a view. That's your job."

{¶ 63} Appellant was not asked any further questions concerning his use of trial counsel.

{¶ 64} During its closing argument, the state argued that its case was not vindictive or all-inclusive by charging appellant with every conceivable crime. The state argued that appellant admitted to several other improprieties, such as campaigning on city time and using city workers and equipment during city time for campaign purposes, and he was not charged as a result of those acts. Near the end of its closing argument, the state said:

{¶ 65} "I did spend one-third of my opening refuting the falsehoods cast by the defense. Unfortunately, that seems to be at least half, if not more, of Defendant Urbin's defense, so do not take these attacks lightly. We think they're improper, but yet they're here and it's something that has be dealt with. In fact, the fact that I didn't wait for him to do it first does not mean I don't believe in my case, my cause or my sergeant."

{¶ 66} The defense objected to the state's use of the term "I." The court responded by instructing the jury that "none of the lawyers are permitted to express their opinions about the case. They can express their opinions about the evidence in the case. There is a difference." The state then concluded its closing. While discussing the admissibility of evidence to the jury, the defense requested a mistrial because of the state's expression of its personal beliefs. The court again overruled the objection and denied the mistrial.

### Assignment of Error Number Seven

{¶ 67} "Appellant was denied his right to a fair trial by the misconduct of the prosecuting attorney."

{¶ 68} In his seventh and final assignment of error, appellant has asserted that the prosecutor's behavior during the trial constituted prosecutorial misconduct. Specifically, appellant has contended that the following incidents establish prosecutorial misconduct: 1) the improper introduction of prior bad acts and character evidence, 2) vouching for the veracity of the lead investigator in the state's closing argument, 3) improperly commenting on appellant's method of responding to questions, and 4) improperly commenting on appellant's use of trial counsel.

{¶ 69} In *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, the Ohio Supreme Court addressed the limited scope within which a judgment may be reversed on grounds of prosecutorial misconduct, stating:

{¶ 70} " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. * * * [G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be

no such thing as an error-free, perfect trial, and that the Constitution does not guarantee such a trial. [I]t is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless including most constitutional violations.'" *Lott,* 51 Ohio St.3d at 166, 555 N.E.2d 293, quoting *United States v. Hasting* (1983), 461 U.S. 499, 508–509, 103 S.Ct. 1974, 76 L.Ed.2d 96.

{¶ 71} Accordingly, a judgment can be reversed on grounds of prosecutorial misconduct only where the improper conduct deprived the defendant of a fair trial. *State v. Carter* (1995), 72 Ohio St.3d 545, 557, 651 N.E.2d 965; see, also, *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d 728.

{¶ 72} To determine whether the prosecutor's comments rise to the level of prosecutorial misconduct, this court must decide whether the remarks were improper, and, if they were, whether they prejudicially affected the substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 15, 14 OBR 317, 470 N.E.2d 883. Even if the question or comment is improper, the verdict will not be overturned unless the defendant was actually prejudiced by the impropriety. *Lott,* 51 Ohio St.3d at 165, 555 N.E.2d 293. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Hill* (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068, citing *Donnelly v. DeChristoforo* (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431. "[I]t must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." *Smith,* 14 Ohio St.3d at 15, 14 OBR 317, 470 N.E.2d 883.

{¶ 73} This court finds that the prosecutor's behavior did not deny appellant a fair trial. First, appellant's contention that the questions concerning other acts constituted prosecutorial misconduct is without merit. As discussed in appellant's sixth assignment of error, the trial court properly addressed the prosecutor's questions regarding appellant's other acts and this court will not review the issue further. Second, the prosecutor did not engage in prosecutorial misconduct when he questioned appellant and suggested that he was attempting to avoid answering questions. This court finds that in the case sub judice, the prosecutor's two attempts to elicit firm answers from appellant were questioning techniques, which did not constitute improper behavior.

{¶ 74} While two of the prosecutor's questions/comments were improper, it has not been established that they prejudicially affected appellant. Appellant's claim of prosecutorial misconduct based on the prosecutor expressing his personal belief is without merit. While the prosecutor's use of "I" in his closing argument was improper, the entire closing argument must be reviewed in order to determine whether the remarks objected to were prejudicial. *State v.*

*Loza* (1994), 71 Ohio St.3d 61, 79, 641 N.E.2d 1082. After careful review of the prosecutor's closing argument, this court finds that, in the context of the entire closing argument and the evidence against appellant and in light of the trial court's admonition to the jury that lawyers cannot express their personal opinions about a case, appellant was not prejudiced.

{¶ 75} Appellant's final claim of prosecutorial misconduct is not well taken. The prosecutor's question concerning appellant's use of his trial counsel was improper, but appellant has not established that it prejudicially affected him. After the question, the trial court gave a curative instruction on the duties of the jury and judge, specifically pointing out the jury's duty to disregard comments suggesting the judge has made a decision on the case or formed an opinion of the case. The record establishes beyond a reasonable doubt that even without the prosecutor's improper questions the jury would have found appellant guilty. Further, appellant has failed to show that any actions by the prosecutor denied him a fair trial. Based on the foregoing, appellant's seventh assignment of error is overruled.

## III

{¶ 76} Appellant's seven assignments of error are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

SLABY, P.J., concurs.

CARR, J., concurs in judgment only.