DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Jeffrey Brown, appeals from his conviction in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} In the early morning hours of October 1, 2005, Appellant, Michael Clark, and the victim, Curtis "Taco" Williams, were at Mr. Clark's apartment drinking and partying. During the party, Appellant felt that Mr. Williams was not fairly sharing the alcohol, so he decided to rob Mr. Williams.
 {¶ 3} Around 4:30 a.m., Mr. Williams and Appellant left the party. Appellant followed behind Mr. Williams as Mr. Williams had promised to give *Page 2 
him a ride home. When they reached the bottom of the stairwell, Appellant jumped Mr. Williams in an attempt to rob him. In response to Appellant's attack, Mr. Williams pulled a gun on Appellant and shot him in the mouth. Appellant then attempted to grab the gun from Mr. Williams and was shot in the torso. Both men continued struggling for the gun, resulting in Mr. Williams being shot in the right armpit. Appellant was then able to get the gun away from Mr. Williams and shot him in the back. Appellant then fled the scene and hid the gun in the bushes.
 {¶ 4} A .22 caliber gun was found near Mr. Williams' body along with five casings. Mr. Williams was taken to the hospital, where he expired. The police found $5.32 in change in Mr. Williams' pants pocket. Mr. Williams also had approximately $79.00 in bills; however, there is no evidence as to where the paper money was found on Mr. Williams' person.
 {¶ 5} The police saw Appellant running from the area where the gun fire was heard. Appellant was holding a wad of money with blood on it in his left hand and there was blood on Appellant's face and shirt. Appellant was taken to the hospital for medical treatment of his gun shot wounds. On October 8, 2005, the police obtained a taped statement from Appellant while he was still in the hospital.
 {¶ 6} On October 25, 2005, the Summit County Grand Jury indicted Appellant as follows: Count One, murder, in violation of R.C.2903.02(B), with a firearm specification, as defined in R.C. 2941.145, an unspecified felony; Count Two, aggravated murder, in violation of R.C. 2903.01(B), with a firearm *Page 3 
specification, as defined in R.C. 2941.145, an unspecified felony; Count Three, aggravated robbery, in violation of R.C. 2911.01(A)(1)/(A)(3), with a firearm specification, as defined in R.C. 2941.145, a first-degree felony; Count Four, having weapons while under disability, in violation of R.C. 2923.13(A)(2), a third-degree felony; and Count Five, carrying a concealed weapon, in violation of R.C. 2923.12(A)(1), a fourth-degree felony.
 {¶ 7} Appellant pled not guilty to all of the charges and filed a motion to suppress the taped statement. The trial court held an evidentiary hearing on the motion to suppress, at which time it listened to the taped statement. The trial court found that Appellant had knowingly, voluntarily, and intelligently waived his Miranda rights and voluntarily gave the taped statement to the police.
 {¶ 8} Appellant proceeded with a jury trial. The jury returned guilty verdicts on the counts of murder, aggravated robbery with a firearm specification, and having a weapon while under disability. Appellant was found not guilty on the remaining counts and specifications.
 {¶ 9} The trial court sentenced Appellant to 15 years to life in prison for Count One, murder; ten years in prison for Count Three, aggravated robbery; three years in prison for the firearm specification on Count Three; and two years in prison for Count Four, having a weapon while under disability. The sentences on Counts One and Three are to be served concurrently, while the sentences on Count Four and the firearm specification are to be served consecutively of each other and *Page 4 
Count One. Additionally, the trial court ordered that on October 1st of every year, the Appellant is to be placed in solitary confinement with a copy of the letter from the victim's brother.
 {¶ 10} Appellant timely appealed, asserting two assignments of error for review.
 II. A. First Assignment of Error "THE TRIAL COURT'S DECISION AND ENTRY DENYING THE APPELLANT'S MOTION TO SUPPRESS THE DEFENDANT'S INVOLUNTARY STATEMENT TAKEN BY THE POLICE IS FACTUALLY AND LEGALLY INCORRECT, AND, ACCORDINGLY, DENIES APPELLANT'S RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS THE STATE OF OHIO CONSTITUTION."
 {¶ 11} Appellant's first assignment of error alleges that the taped statement given to the police while he was in the hospital was not voluntary. Appellant contends that he lacked the capacity to knowingly, voluntarily, and intelligently waive his Miranda rights as he was in the hospital receiving treatment for gun shot wounds and was under the influence of morphine and Haldol. Accordingly, it is Appellant's position that the taped statement should have been excluded at trial. The State contends that this is a "non-issue." We conclude that, because of the limited manner in which the statement was utilized in this trial, any error of the *Page 5 
trial court concerning the voluntary nature of the waiver is of no moment, and would not warrant reversal.
 {¶ 12} Appellant testified on his own behalf. During his direct examination he attempted to counter the version of the events on the taped statement. On cross-examination of Appellant, the State utilized the taped statement to impeach Appellant's credibility by pointing out the inconsistencies between his trial testimony and the taped statement. At no time during the trial did the State introduce the taped statement in its case-in-chief.
 {¶ 13} In Harris v. New York (1971), 401 U.S. 222, the United States Supreme Court held that the prosecution may use a defendant's prior inconsistent statement as rebuttal testimony to impeach the defendant's credibility, regardless of whether there was compliance withMiranda. Id. at 225-26. See, also, Wright v. State (1998), 349 Md. 334,375, 385 (Chasanow, J., concurring and dissenting) ("Harris should be applicable when the prosecutor knows there are Miranda violations, when the prosecutor is uncertain whether there are Miranda violations, when the prosecutor is doubtful whether there are Miranda violations, and when there are no Miranda violations."). As long as the defendant's statement was voluntary, the prosecution may use the statement to impeach the defendant. Michigan v. Harvey (1990), 494 U.S. 344, 350. Based upon our review of the suppression transcript and the taped statement, we find Appellant's taped *Page 6 
statement to be trustworthy for impeachment purposes as there is no indication or suggestion in the record that the taped statement was involuntary or coerced.
 {¶ 14} The invited error doctrine prohibits a party from "appealing] an error which occurred as a direct result of that party's own actions at trial." State v. Rollins (July 19, 1991), 6th Dist. No. F-88-11, at *4, citing State v. Woodruff (1983), 10 Ohio App.3d 326, 327. By taking the stand and testifying specifically as to the substance of his taped statement, Appellant opened the door for the State to use his inconsistent statements for impeachment in rebuttal. See, e.g.,State v. Winfield (Sept. 18, 2000), 4th Dist. No. 98CA2453, at *6. Additionally, Appellant has waived any error regarding the suppression of the taped statement as he, for tactical reasons, chose to testify and introduce the substance of the taped statement in his case-in-chief. SeeState v. Santiago, 9th Dist. No. 01CA007798, 2002-Ohio-1114, at *4.
 {¶ 15} Appellant's first assignment of error is overruled.
 B. Second Assignment of Error "EACH OF THE CONVICTIONS RETURNED AGAINST THE APPELLANT MUST BE REVERSED BECAUSE EACH IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 16} In his second assignment of error, Appellant asserts that his conviction on the aggravated robbery charge was against the manifest weight of the evidence. Appellant argues that Appellee's evidence as to whether Appellant *Page 7 
had intent or did in fact rob Mr. Williams is against the manifest weight of the evidence. We disagree.
 {¶ 17} While the caption of the second assignment of error refers to "each of the convictions," Appellant's argument only addresses the aggravated robbery conviction. Accordingly, we will limit our review of the manifest weight question to the aggravated robbery conviction.
 {¶ 18} Manifest weight is a question of fact. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. If the trial court's judgment was against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id. In the special case of a jury verdict, however, the panel must be unanimous in order to reverse. Id. at paragraph four of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Constitution. Because reversal on manifest weight grounds is not a question of law, it is not an acquittal but instead is akin to a deadlocked jury from which retrial is allowed. Id. at 388, citingTibbs v. Florida (1982), 457 U.S. 31, 42. Under this construct, the appellate panel "sits as [the] `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony," finding that the State has failed its burden of persuasion. Id.
 {¶ 19} When a defendant asserts his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a *Page 8 
manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
"A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Otten, 33 Ohio App.3d at 340.
 {¶ 20} In application, this may be stated as a "[c]ourt will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." State v. Lee,158 Ohio App.3d 129, 2004-Ohio-3946, at ¶ 15, quoting State v. Hall (Sept. 20, 2000), 9th Dist. No. 19940, at *5. Nor is a conviction "against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Urbin, 148 Ohio App.3d 293,2002-Ohio-3410, at ¶ 26, quoting State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, at *7.
 {¶ 21} Appellant was found guilty of aggravated robbery, in violation of R.C. 2911.01(A)(1)/(A)(3), which provides in relevant part that,
 "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: *Page 9 
 "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 "(3) Inflict, or attempt to inflict, serious physical harm on another."
The disputed element here is whether Appellant attempted or committed a theft offense: the remaining elements are not at issue.
 {¶ 22} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State that Appellant either attempted or did commit a theft offense. The jury heard testimony from the State's 15 witnesses. The defense produced one witness: the Appellant testifying in his own defense.
 {¶ 23} Appellant's main argument is that there is "no evidence that [he] had any of the victim's money or any other property that belonged to the victim." Appellant does not deny that he was holding money in his hand at the time of his arrest. However, he claims that the money belonged to him and he had pulled it out of his pocket to check to see if the victim had robbed him during their scuffle with the gun.
 {¶ 24} Specifically, Appellant challenges the State's testimony regarding the DNA profiles found on the money. Brenda Gerardi, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation, performed DNA analysis on 11 bills recovered from the crime scene. Ms. Gerardi's testing found *Page 10 
that the DNA profile on six of the 11 bills was consistent with Appellant's DNA. Both Ms. Gerardi's report and her testimony on direct examination state that "the expected frequency of occurrence of the DNA profile identified on * * * the money is 1 in 6 quintillion 557 quadrillion individuals." This means that in "6 quintillion 557 quadrillion people, you would expect to find that profile once." Accordingly, Appellant could not be excluded as the source of the DNA on those six bills. We understand that her finding of "unable to exclude" is her professional way of stating that appellant is "included" as a possible donor of the DNA found on the money, and that it could be expected that another individual having such a match would not be found until 6 quintillion 557 quadrillion individuals had been tested.
 {¶ 25} There was only one bill on which Ms. Gerardi found a mixture of both the Appellant's and the victim's DNA. Based on this mixture of DNA, Ms. Gerardi was unable to exclude either Appellant or the victim as possible DNA contributors. With regards to the bill with the mixture of DNA, Ms. Gerardi explained that the proportion of the population that could not be excluded as possible contributors to the mixture DNA profiles found on this one bill is one in nine persons. While the DNA statistics for the one bill is not as conclusive as the DNA statistics for the other six bills, it is still relevant. These statistics considered in conjunction with the following DNA testimony by Ms. Gerardi, the fact that Appellant had money in his hand as he fled the crime scene, and Mr. Starcher's *Page 11 
testimony below, all support Appellant's aggravated robbery conviction as not being against the manifest weight of the evidence.
 {¶ 26} Lastly, Ms. Gerardi explained that just because someone touched the bills, does not mean that they left any detectable DNA on the bills. There were a total of 11 bills found in Appellant's hand at the time of his arrest. Of those 11 bills, ten of them did not contain the victim's DNA, while the remaining bill could not exclude the victim's DNA. Based on Ms. Gerardi's testimony, the lack of the victim's DNA on ten of the bills does not negate the possibility that those ten bills were in the victim's possession prior to the bills being found in Appellant's bloody hand.
 {¶ 27} In addition to the DNA testimony, the State provided the testimony of Terry Starcher, a fellow inmate and acquaintance to Appellant. Mr. Starcher testified that while he and Appellant were in the local jail, Appellant told him about the events on October 1, 2005. Mr. Starcher relayed that Appellant was partying with Mr. Williams and some other people and became angry when Mr. Williams refused to share his wine with him. Since Mr. Williams had not shared the wine, Appellant decided to rob him. Appellant "called his roommate to make [Mr. Williams] feel more comfortable about leaving with him" and informed his roommate that he was getting a ride home from Mr. Williams. As Appellant and Mr. Williams left the party, Appellant jumped him from behind in order to rob him. However, Mr. Williams pulled out a gun and shot Appellant in the mouth. *Page 12 
Mr. Starcher described in detail the struggle for the gun between Appellant and Mr. Williams and where each of them were shot. Lastly, Mr. Starcher told the jury how Appellant fled the scene and discarded the gun.
 {¶ 28} Appellant did not deny that he spoke with Mr. Starcher in jail, but claimed that he did not give him any of the details to which Mr. Starcher testified. However, Appellant's version of the events was similar in many respects, with the exception of his intent to rob Mr. Williams and jumping him. Instead, Appellant asserted that he was acting in self-defense to Mr. Williams' sexual advances. Nonetheless, Appellant was unable to explain how Mr. Starcher knew of the details of the incident.
 {¶ 29} Appellant attempts to discredit Mr. Starcher's testimony by focusing on Mr. Starcher's motive for testifying against him. However, Mr. Starcher testified on both direct and cross-examination that he had not entered into any agreement with the State nor was he receiving a sentence reduction on his pending case in exchange for his testimony. Lieutenant Phillips, further, confirmed that Mr. Starcher was not receiving any deals by testifying in this matter.
 {¶ 30} While Mr. Starcher's credibility may be tainted by the fact that he is also a prison inmate, his motivation in testifying against Appellant was clearly not fueled by consideration of a lesser sentence for his own crime. Mr. Starcher testified to facts that were privy only to Appellant and Mr. Williams. Appellant's *Page 13 
attempts to discredit Mr. Starcher's account of the events and his credibility appear ineffective.
 {¶ 31} Based on our review of the entire record, specifically Mr. Starcher's testimony in conjunction with the DNA evidence, we conclude that Appellant's criticisms of the State's evidence in this case are inadequate to prove that the jury lost its way and created a manifest miscarriage of justice. Thompkins, 78 Ohio St.3d at 387. Rather, we find it reasonable that the jury believed the State's version of the events, disbelieved Appellant and convicted him accordingly. We conclude that the aggravated robbery conviction is not against the manifest weight of the evidence.
 {¶ 32} Appellant's second assignment of error is overruled.
 III. {¶ 33} Appellant's assignments of error are overruled. The judgment of Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into *Page 14 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J., CARR, J., CONCUR.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1