DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Michael Klema appeals his felony conviction in the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On three separate occasions (October 6, 14, and 17, 2003), an informant working on behalf of the Medina City Police Department went to Appellant's business to purchase marijuana. On each of these occasions, the police had Appellant's business under surveillance and had the informant wired so that they could listen. About an hour after the third of these transactions, the police executed a warrant to search Appellant's business and upstairs apartment. Police discovered and seized marijuana, drug paraphernalia, and cash. They arrested Appellant, and also arrested a bartender working at the business.
 {¶ 3} The Medina County Grand Jury indicted Appellant on three counts of drug (marijuana) trafficking, in violation of R.C. 2925.03(A)(1)(C)(3)(a), fifth degree felonies, with a forfeiture specification per R.C. 2925.42(A)(1). Appellant pled not guilty and the case proceeded to trial. A jury acquitted Appellant on two counts, but convicted him on the third, and the court sentenced him accordingly. Appellant has appealed, asserting three assignments of error for review.
 II. A. First Assignment of Error
"THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY REFUSING TO GIVE A REQUESTED JURY INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF ENTRAPMENT, WHERE THE EVIDENCE WARRANTED THAT JURY INSTRUCTION."
 {¶ 4} Appellant asserts that the trial court improperly refused his request for a jury instruction regarding police entrapment, from which he implies that either reversal of his conviction or a new trial is warranted. This Court disagrees.
 {¶ 5} The decision of whether or not to give a jury instruction on an affirmative defense is reviewed for an abuse of discretion. See State v. Getsy, 84 Ohio St.3d 180, 198, 1998-Ohio-533. "Entrapment is an affirmative defense under R.C. 2901.05(C)(2)." State v. Doran (1983), 5 Ohio St.3d 187, paragraph two of the syllabus. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 6} "[I]n order for the defendant to successfully raise an affirmative defense, evidence of a nature and quality sufficient to raise the issue must be introduced, from whatever source the evidence may come. Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of [the] defense." (Internal quotations, citations, and edits omitted.) State v.Melchior (1978), 56 Ohio St.2d 15, 20. However, "[i]f the evidence generates only a mere speculation or possible doubt,
such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted." (Emphasis added, citation omitted.) Id. Thus, we must find that the evidence produced at trial raised a reasonable unlikelihood of guilt, not merely speculation or possibility.
 {¶ 7} Appellant's counsel requested a jury instruction on entrapment, and the court responded by asking him to articulate his basis:
"THE COURT: My question is, why do you believe a jury can find by a preponderance of the evidence that the police officer, or in this case, the confidential informant, planted in the mind of the defendant, Mr. Klema, the original idea or purpose, thus furnishing from the start the moving force or incentive to commit an offense which the defendant did not himself conceive of committing the offense, and if it was suggested to him by the office[r] for the purpose of causing his arrest and prosecution, the defendant must be found not guilty.
"Where is there evidence, by a preponderance of the evidence, that the jury could find this?"
In response, Appellant's counsel pointed to evidence from each of the three dates in question. However, because the jury acquitted Appellant on the first two counts we need not consider the propriety of refusing the instruction as it relates to those counts, and need not analyze evidence from those dates. Instead we will focus on the evidence from the third count, involving the incident on October 17, 2003, the sole count upon which Appellant was convicted.
 {¶ 8} Appellant's counsel argued: "I think the results of the search tend to indicate a lack of predisposition, there wasn't even an ounce of marijuana in the entire building. There was [sic] no baggies. There was $300 taken predominantly out of cash registers." But, the court was unpersuaded:
"[THE COURT:] I don't think there is enough evidence to allow the trier of fact to conclude there is a lack of predisposition.
"Based on the evidence offered, I won't give the [requested police entrapment] instruction.
"The question [to Appellant's counsel] is, do you wish to reopen your case?
"* * *
"[APPELLANT'S COUNSEL]: No, Your Honor.
"THE COURT: Then I won't give the instruction because I don't think there is enough evidence to allow the trier of fact to come to that conclusion."
 {¶ 9} Based on our review of the record, this Court might find that the evidence supports a speculation that Appellant was not routinely engaged in the sale of marijuana, or supports apossible doubt as to Appellant's predisposition to sell marijuana, but speculation and possibility are not enough. SeeMelchior, 56 Ohio St.2d at 20. Appellant's attorney referred to the relatively small quantity of marijuana found on the premises, the absence of baggies ordinarily used to package marijuana for sale, and the limited amount of money on hand, all as "tend[ing] to indicate a lack of predisposition." Even if we accept these facts in isolation, removed from the totality of the evidence (such as the audiotape recordings), and view them from the favorable perspective desired by Appellant, then, at most, these facts prompt some doubt; they do not disprove the likelihood that Appellant was guilty of selling drugs on the night in question or was predisposed to do so. See id. Furthermore, even if this Court was so persuaded, this argument is insufficient to justify a finding that the trial court abused its discretion in reaching its own conclusion on the totality of the evidence. SeeBlakemore, 5 Ohio St.3d at 219. This assignment of error is overruled.
 B. Second Assignment of Error
"TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE NUMEROUS LEADING QUESTIONS ASKED BY THE PROSECUTOR ON DIRECT EXAMINATION OF STATE'S WITNESSES THROUGHOUT THE TRIAL, WHERE THOSE QUESTIONS ELICITED TESTIMONY PREJUDICIAL TO APPELLANT THAT RESULTED IN A CONVICTION."
 {¶ 10} Appellant alleges that his trial counsel was so ineffective as to render his conviction unjust and points to specific conduct by his attorney at trial as evidence of the purported ineffectiveness. Specifically, Appellant complains of his trial counsel's failure to object to the prosecution's questioning of its witnesses during direct examination. Appellant concludes that this perceived ineffectiveness warrants a new trial. This Court disagrees.
 {¶ 11} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel. McMann v. Richardson (1970), 397 U.S. 759, 771,25 L.Ed.2d 763. Courts employ a two-step process to determine whether this right to effective assistance of counsel has been violated:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment.
"Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (Paragraph break added.) Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674.
Either of these steps may determine the outcome and based on Appellant's particular claims of error in this appeal this Court finds the deficiency question dispositive, which negates a need to inquire into prejudice.
 {¶ 12} An attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160, 174. Thus, on an appeal for ineffective assistance of counsel, the appellant has the burden of proof and must overcome the presumption that counsel's performance was adequate or that counsel's action might have been sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100. More to the point, it has been determined as a matter of law that "an attorney's decision as to whether or not to object at certain times during trial is presumptively considered a trial tactic or strategy." State v. Edwards, 9th Dist. No. 04CA008523, 2005-Ohio-3947, at ¶ 16; State v.Phillips (1995), 74 Ohio St.3d 72, 85. Accordingly, Appellant's charges cannot rise to the level of ineffective assistance of counsel. See Strickland, 466 U.S. at 687. This assignment of error is overruled.
 B. Third Assignment of Error
"THE JURY'S THREE VERDICTS WERE INCONSISTENT, THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY'S SINGLE GUILTY VERDICT, AND APPELLANT'S TRAFFICKING IN DRUGS (MARIJUANA) CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} Appellant asserts that the State's evidence was insufficient to sustain the one guilty verdict (on the third of the three drug trafficking charges). His primary theory is that the State's key witness, a paid informant, was not credible. Appellant challenges the informant's testimony as unreliable and, as further support for this theory, relies on his acquittal on the other two trafficking counts as proof that the jury did not believe the informant's testimony. Appellant labels the verdicts as inconsistent and contends that this outcome renders his conviction on the third count unsupportable. According to Appellant, the conviction was similarly against the manifest weight of the evidence, his opinion being that the State's evidence did not prove the charge beyond a reasonable doubt. He points to conflicting evidence: that the bartender also had marijuana on the night of the search (i.e., could have been the seller), the pouch containing marijuana was found in the café kitchen not at the cigar counter (i.e., maybe it was not Appellant's), the marked $50 bill was found on the police station floor not on Appellant (i.e., could have come from anyone), and Appellant's longtime friend and business partner testified that Appellant would not sell drugs in their café. Based on his rendition of the evidence, Appellant contends that his conviction should be reversed for insufficiency or a new trial ordered because the conviction was against the manifest weight of the evidence. This Court disagrees.
 {¶ 14} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, paragraph two of the syllabus. As a matter of appellate review, they involve different means and ends. Id. at 386-89. They also invoke different inquiries with different standards of review. Id.; State v. Smith, 80 Ohio St.3d 89,113, 1997-Ohio-355. In the simplest sense, this difference is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion. Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 15} Sufficiency is a question of law. Id. at 386; Smith,80 Ohio St.3d at 113. If the State's evidence is found to have been insufficient as a matter of law, then on appeal, a majority of the panel may reverse the trial court. Thompkins,
78 Ohio St.3d at paragraph three of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Const. Because reversal for insufficiency is effectively an acquittal, retrial is prohibited by double jeopardy. Id. at 387, citing Tibbs v. Florida (1982),457 U.S. 31, 47, 72 L.Ed.2d 652. Under this construct, the State would have failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury. Id. at 386; Smith, 80 Ohio St.3d at 113.
 {¶ 16} In a sufficiency analysis, an appellate court presumes that the State's evidence is true (i.e., both believable and believed), but questions whether that evidence satisfied each element of the offense. See State v. Getsy, 84 Ohio St.3d 180,193, 1998-Ohio-533. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,61 L.Ed.2d 560. Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a light most favorable to the prosecution." Id. "[T]he weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 17} Manifest weight is a question of fact. Thompkins,78 Ohio St.3d at 387. If the trial court's judgment is found to have been against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id. For a jury verdict, however, the panel must be unanimous in order to reverse. Id. at paragraph four of the syllabus, citing Sec.3(B)(3), Art. IV, Ohio Const. Because this is not a matter of law, reversal on manifest weight grounds is not an acquittal but instead is akin to a deadlocked jury from which retrial is allowed. Id. at 388, citing Tibbs, 457 U.S. at 43. Under this construct, the appellate panel "sits as the `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony," id., wherein the State would have failed its burden of persuasion.
 {¶ 18} In a manifest weight analysis, an appellate court undertakes a three-step, sequential inquiry: whether the State's account was believable based upon the evidence; and if so, whether it was more believable than the defendant's version or criticism of the evidence; but if not, whether the State's case was so unbelievable or unpersuasive as to undermine the integrity of the jury's finding of guilt and cause one to question whether justice was done. See Thompkins, 78 Ohio St.3d at 387-88. Obviously, "[a] conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Urbin, 148 Ohio App.3d 293,2002-Ohio-3410, ¶ 26.
 {¶ 19} In the first step, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses[,] and * * * resolve[s] conflicts in the evidence." Thompkins, 78 Ohio St.3d at 387. The second step "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Internal quotations and emphasis omitted.) Smith, 80 Ohio St.3d at 113. "Weight is not a question of mathematics, but depends on its effect in inducing belief." (Quotations and emphasis omitted.) Thompkins,78 Ohio St.3d at 387. And in completing this step, "[a] court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390 (Cook, J., concurring).
 {¶ 20} However, the final step dictates that an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the convictionmust be reversed and a new trial ordered." (Emphasis added.) Id. at 387. See, also, id. at 390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. In application, this may be stated as: "[a court] will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." State v. Lee, 158 Ohio App.3d 129,2004-Ohio-3946, ¶ 15.
 {¶ 21} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Thompkins,78 Ohio St.3d at 388. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Lee at ¶ 18. Accord Urbin at ¶ 31. In the present case, manifest weight is dispositive.
 {¶ 22} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State. Appellant was charged with selling a controlled substance. R.C. 2925.03(A)(1) (C)(3)(a). Marijuana is a controlled substance. R.C. 2925.01(A), R.C.3719.01(C) 3719.41(C)(19). There is no dispute that the drugs in question were marijuana. The dispute is whether Appellant was actually the person who sold the marijuana to the informant and if Appellant had the necessary intent to sell any drugs.
 {¶ 23} The State produced four witnesses: three police detectives and the informant. The State also introduced evidence, including audio tape recordings of each of the three transactions between Appellant and the informant, the drugs allegedly purchased from Appellant by the informant, photo copies of the money used for the purchases, the drugs and paraphernalia seized by the police from Appellant's home and business during the search, and photos of the premises taken during the search. Appellant produced a single witness in his defense.
 {¶ 24} One of the police detectives oversaw the controlled buys and testified as to the particular events. He testified that the informant was searched before the purchase to confirm that he had no drugs or money. The informant was instructed as to how to proceed, and was equipped with the recording device (wire) so that the police could monitor the interaction. The detective provided the informant with money to make the purchase and retrieved the drugs and remaining money from the informant after the purchase. This officer also labeled and preserved the audiotape recordings from the wire for use at trial. Another officer testified about the laboratory analysis that confirmed the drugs as marijuana. The third officer testified to finding a $50 bill, folded up very small, on the floor beneath a bench in the Medina City Police station's booking room, but acknowledged that this discovery occurred some hours after Appellant had been transferred, and he could not testify that he had seen Appellant seated at this location. The $50 bill was later identified as having been one of the marked bills used in the controlled buy at Appellant's business that led to the arrest.
 {¶ 25} The informant testified that he purchased drugs from Appellant on three occasions, at the behest of the police, and identified Appellant in court. He described the events of the drug purchases with reasonable detail, and acknowledged that Appellant had been visibly intoxicated on the second occasion. The informant admitted on direct examination that he had a felony record for receiving stolen property as well as larceny, that he was paid by the police to perform these controlled buys, and that he had worked with the police in this capacity before. On cross examination, Appellant attempted to impeach the informant's testimony by emphasizing the informant's criminal history, suggesting that he was paid only if he succeeded in purchasing drugs, and contradicting the informant's trial testimony with the audio tapes from the controlled buys.
 {¶ 26} On the first occasion (October 6, 2003), the informant was heard on the tape describing Appellant as drooling and very drunk, which contradicted the informant's in court testimony that Appellant had been visibly intoxicated only on the second occasion. However, the tape also revealed that Appellant sold a small quantity of marijuana to the informant that night. On the second occasion (October 14, 2003), the informant was once again heard on the tape describing Appellant as visibly drunk, which was actually consistent with the informant's prior testimony. This tape also illustrated the informant's story at trial that Appellant had scraped together a small quantity of marijuana remnants and sold it to the informant. Appellant did not play the third tape or specifically challenge the informant's testimony as to this third occasion (October 17, 2003); however, the State played the tape of this transaction for the jury on redirect examination. Appellant was depicted as coherent, which was consistent with the informant's independent testimony. Moreover, the tape recounted the transaction for the jury: $50 for a quarter ounce of marijuana.
 {¶ 27} On appeal, Appellant attacks the informant's credibility and insists that his unreliability renders the State's case unbelievable. This was a point worth arguing at trial, as the jury members were obligated to assess the evidence critically under the strict standard of beyond-a-reasonable-doubt. This Court, under the manifest weight standard, is similarly charged with independently "consider[ing] the credibility of witnesses," Thompkins, 78 Ohio St.3d at 387, and need not "view the evidence in a light most favorable to the prosecution." Id. at 390 (Cook, J., concurring). But, in conducting this review, we must assess the evidence liberally, considering whether "the evidence weighs [so] heavily against the conviction" that the necessary conclusion is that "the jury clearly lost its way and created a manifest miscarriage of justice." Id. at 387. In reaching this conclusion, we must also recognize that a finder of fact is free to believe all, part, or none of the testimony of any witness who appears before it.State v. Caldwell (1992), 79 Ohio App.3d 667, 679; State v.Antill (1964), 176 Ohio St. 61, 67.
 {¶ 28} This Court has reviewed the entire record, including the informant's trial testimony, and finds that the State presented a coherent version of the events supported by sufficiently believable evidence. The record demonstrates that Appellant's attack on the informant's credibility was presented to the jury: the informant was present to testify and was subjected to rigorous cross examination; the court instructed the jury as to its role in evaluating witness credibility; and this unreliability issue was emphasized by Appellant in both his opening and closing arguments. Based on our analysis of the testimony, we are not persuaded that the informant's credibility was so impugned as to undermine the State's case. However, we also find, from our perspective on review, that the informant's credibility was rendered inconsequential by the audiotape recordings.
 {¶ 29} Even without the informant's testimony, the jurors were able to hear for themselves the actual transactions that transpired between Appellant and the informant, in Appellant's own voice. Taking this audiotape evidence into account, we find that the State presented a believable case based upon the evidence, and we find Appellant's criticisms unpersuasive. SeeThompkins, 78 Ohio St.3d at 3878-8. Moreover, the State's version was not so unbelievable as to undermine the integrity of the jury's finding of guilt or to cause us to question whether justice was done. See id. The informant's alleged lack of credibility does not alter the persuasiveness of the tapes, which document Appellant in the act of selling drugs.
 {¶ 30} Appellant also points to other evidence as weighing against a finding of guilt, such as the incorrect location of the marijuana pouch, the $50 bill, or the fact that the bartender was also found to have marijuana. However, the above rationale nullifies these questions as well. None of these issues would need to be resolved in order to listen to the taped conversation between Appellant and the informant and decide that Appellant sold marijuana to the informant on October 17, 2003. Similarly, we find the character testimony offered by Appellant's lifelong friend and business partner to be irrelevant in light of these tapes.
 {¶ 31} Finally, we address Appellant's theory of inconsistent verdicts. Appellant is troubled by these verdicts due to his express assumption that the jury must have disbelieved the informant in order to acquit him of the first two counts. From this, Appellant theorizes that the jury could not have believed the informant on the third count, after not believing him about the first two; and the conviction on the third count must therefore be against the manifest weight of the evidence. Since nothing in the record actually documents what the jurors believed or disbelieved, or why they acquitted or convicted Appellant, Appellant's premise is mere speculation. We need not agree that the jury acted as alleged by Appellant, or that the verdicts were necessarily inconsistent on that basis.
 {¶ 32} We conclude that Appellant has failed to prove that the jury lost its way or that the conviction constitutes a manifest miscarriage of justice. See id. This Court finds that the conviction is not against the manifest weight of the evidence. See id. This determination is also dispositive of the issue of sufficiency. See Lee at ¶ 18. These assignments of error are overruled.
 III. {¶ 33} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Carr, P.J., Moore, J., concur.