DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant Raymond Spikes appeals his felony conviction in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} A little after 10:30 p.m. on November 30, 2004, a 68-year old woman was returning to her car after shopping at the Tops Supermarket in Sheffield Village, Lorain County, Ohio. The parking lot was dark, cold, and wet, as rain and sleet had been falling for most of the night. As she placed her groceries in the car, a middle-aged black man, dressed in dark clothes, pointed a gun in her face and mumbled something unintelligible. Instinctively, she released her purse. The man grabbed the purse, shoved her to the ground, and fled on foot. After a few moments, the victim picked herself up from the wet ground and, soaking wet and shaking with fear, returned to the safety of the supermarket for assistance.
 {¶ 3} A store employee called 9-1-1 and relayed the information from the victim to the police dispatcher. As the victim described her attacker, the employee realized that she had also encountered the man a short time earlier, while smoking a cigarette, as he paced nervously outside the store, fumbling with something in his jacket. The employee relayed this information to the police as well. Officers arrived within minutes and began patrolling the area.
 {¶ 4} An officer in a police cruiser, circling the parking lot of a nearby business, spotted a black man, dressed in black, crouching near a fence. Upon being spotted, the man rose, ran, scaled the fence, tumbled to the other side, gathered himself, and continued to run for the woods further to the north. The officer ordered the man to stop but did not pursue him over the fence. Retracing the man's path, the officer found the victim's purse at the spot where he had seen the man crouching. Other officers found the victim's sunglasses and keys nearby.
 {¶ 5} Another officer arrived as the fleeing suspect was descending the fence and pursued him to the woods. When the man disappeared into the woods, this officer joined with others to secure a perimeter and contain the man within. Meanwhile, a K-9 unit officer arrived with his German shepherd and called out for the man to surrender or he would release the dog. The man surrendered and the officers recovered gloves and a cap in the nearby woods. The officers did not find a gun.
 {¶ 6} Appellant was the man who surrendered to the police on that dark, wet night outside the woods near the supermarket. The officers took him back to the supermarket where the victim identified him as her attacker and the supermarket employee identified him as the man she had seen lurking outside the store. Later, the first officer identified Appellant as the man he had seen crouching by the fence, at the spot where he recovered the victim's purse.
 {¶ 7} The Lorain County Grand Jury indicted Appellant for theft, per R.C. 2913.02(A)(1), a fifth degree felony; robbery, per R.C. 2911.02(A)(1)(2), a second degree felony; and aggravated robbery, per R.C. 2911.01(A)(1), a first degree felony, including a firearm specification, per R.C.2929.14(D)(1)(a)(ii) and R.C. 2941.145. Appellant pled not guilty and the case proceeded to trial. A jury convicted Appellant on all three counts and the court sentenced him accordingly. Appellant has timely appealed, asserting three assignments of error for review.
 II. A. First Assignment of Error "APPELLANT'S CONVICTIONS FOR THEFT, AGGRAVATED ROBBERY, AND ROBBERY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." Second Assignment of Error
 "THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE." {¶ 8} Appellant asserts that the State's failure to produce the alleged gun and the unreliability of the victim's testimony render the State's evidence insufficient to prove each element of each offense. Appellant similarly claims that the verdicts were against the manifest weight of the evidence. This Court disagrees.
 {¶ 9} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, paragraph two of the syllabus. As a matter of appellate review, they involve different means and ends. Id. at 386-89. They also invoke different inquiries with different standards of review. Id.; State v. Smith, 80 Ohio St.3d 89,113, 1997-Ohio-355. In the simplest sense, this difference is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion. Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 10} Sufficiency is a question of law. Id. at 386; Smith,80 Ohio St.3d at 113. If the State's evidence is found to have been insufficient as a matter of law, then on appeal, a majority of the panel may reverse the trial court. Thompkins,
78 Ohio St.3d at paragraph three of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Const. Because reversal for insufficiency is effectively an acquittal, retrial is prohibited by double jeopardy. Id. at 387, citing Tibbs v. Florida (1982),457 U.S. 31, 47, 72 L.Ed.2d 652. Under this construct, the State would have failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury. Id. at 386; Smith, 80 Ohio St.3d at 113.
 {¶ 11} In a sufficiency analysis, an appellate court presumes that the State's evidence is true (i.e., both believable and believed), but questions whether that evidence satisfied each element of the offense. See State v. Getsy, 84 Ohio St.3d 180,193, 1998-Ohio-533. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,61 L.Ed.2d 560. Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a light most favorable to the prosecution." Id. "[T]he weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 12} Manifest weight is a question of fact. Thompkins,78 Ohio St.3d at 387. If the trial court's judgment is found to have been against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id. In the special case of a jury verdict, however, the panel must be unanimous in order to reverse. Id. at paragraph four of the syllabus, citing Sec. 3(B)(3), Art. IV, Ohio Const. Because this is not a matter of law, reversal on manifest weight grounds is not an acquittal but instead is akin to a deadlocked jury from which retrial is allowed. Id. at 388, citing Tibbs, 457 U.S. at 43. Under this construct, the appellate panel "sits as the `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony," id., wherein the State would have failed its burden of persuasion.
 {¶ 13} In a manifest weight analysis, an appellate court essentially undertakes a three-step, sequential inquiry: whether the State's account was believable based upon the evidence; and if so, whether it was more believable than the defendant's version or criticism of the evidence; but if not, whether the State's case was so unbelievable or unpersuasive as to undermine the integrity of the jury's finding of guilt and cause one to question whether justice was done. See Thompkins,78 Ohio St.3d at 387-88. Obviously, "[a] conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Urbin,148 Ohio App.3d 293, 2002-Ohio-3410, ¶ 26.
 {¶ 14} In the first step, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses[,] and * * * resolve[s] conflicts in the evidence." Thompkins, 78 Ohio St.3d at 387. The second step "concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Internal quotations and emphasis omitted.) Smith, 80 Ohio St.3d at 113. "Weight is not a question of mathematics, but depends on its effect in inducing belief." (Quotations and emphasis omitted.) Thompkins,78 Ohio St.3d at 387. And in completing this step, "[a] court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390 (Cook, J., concurring).
 {¶ 15} However, the final step dictates that an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the convictionmust be reversed and a new trial ordered." (Emphasis added.) Id. at 387. See, also, id. at 390 (Cook, J., concurring) (stating that the "special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. In application, this may be stated as: "[a court] will not overturn a judgment based solely on the fact that the jury preferred one version of the testimony over the other." State v. Lee, 158 Ohio App.3d 129,2004-Ohio-3946, ¶ 15.
 {¶ 16} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Thompkins,78 Ohio St.3d at 388. "Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Lee at ¶ 18. Accord Urbin at ¶ 31. In the present case, manifest weight is dispositive.
 {¶ 17} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State. Appellant was charged with theft, robbery, and aggravated robbery with a firearm specification. The State produced eight witnesses: five police officers, the victim, the supermarket employee, and the victim's ophthalmologist. Four of the police officers were present during the search for the attacker and the ensuing apprehension of Appellant, and each testified as to his personal observations and participation. The fifth officer was the police dispatcher. Appellant did not produce any witnesses or present a defense, but did cross-examine the State's witnesses and entered a copy of the victim's driver's license into evidence.
 {¶ 18} Theft is codified as: "No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner * * * [.]" R.C. 2913.02(A)(1). Robbery is a theft offense, with "a deadly weapon on or about the offender's person or under the offender's control." R.C. 2911.02(A)(1)(2). Aggravated robbery is robbery with an added element: "either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2911.01(A)(1). Similarly, for a firearm specification, the State must charge the offender with having a firearm while committing the offense as well as displaying, brandishing, indicating possession, or using it in the offense. R.C. 2929.14(D)(1)(a)(ii), citing R.C. 2941.145.
 {¶ 19} The victim identified Appellant at the scene and in court. She testified that, on the night in question, Appellant took her purse from her, by force and without her consent, and fled with it into the dark. She testified that Appellant had a handgun, that he pointed it at her head with trembling hands, and that he shoved her violently to the ground. Officers identified Appellant in court. One officer also testified that, on the night in question, he recovered the victim's purse from the location where he had discovered Appellant crouching in the dark near a fence. Another officer testified that he recovered the victim's keys in the woods near the location where Appellant was apprehended. Based on the record, this Court finds that the State produced at least some evidence that Appellant took the victim's property (purse and contents), without her consent, by use of a deadly weapon (handgun) and by threat of deadly force (pointing the handgun at her head).
 {¶ 20} On appeal, Appellant challenges the victim's credibility as a witness and insists that her unreliability renders the State's case unbelievable, concluding with an assertion that she was mistaken and he was not the actual perpetrator. As support for this argument, Appellant relates that the victim did not mention a mustache in her original description to the police, she described a black skull cap but the police found only a white baseball cap, and she wavered between describing his jacket as dark or charcoal. As explanation for her misidentification, Appellant relates that the parking lot was dark, it was raining, and the victim requires glasses, at least according to her driver's license. These were all points worth arguing to the members of the jury, who were obligated to assess the evidence critically under the strict standard of beyond-a-reasonable-doubt.
 {¶ 21} Under the manifest weight standard of review, this Court is charged with independently "consider[ing] the credibility of witnesses," Thompkins, 78 Ohio St.3d at 387, and need not "view the evidence in a light most favorable to the prosecution." Id. at 390 (Cook, J., concurring). However, in conducting the review, this Court must assess the evidence liberally, considering whether "the evidence weighs [so] heavily against the conviction" that the necessary conclusion is that "the jury clearly lost its way and created a manifest miscarriage of justice." Id. at 387. This Court is also mindful that direct and circumstantial evidence are of equal probative value, Jenks, 61 Ohio St.3d at 259, and jurors may draw reasonable inferences from facts and testimony in evidence. SeeState v. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 114.
 {¶ 22} This Court has conducted a review of the record. According to the testimony, the victim was unequivocal in her identification of Appellant, both on the night of the attack and again in court, and was equally sure that he pointed a gun at her head before grabbing her purse and fleeing. The State supported the victim's testimony with testimony by the store employee and the responding police officers. The store employee also twice identified Appellant, once on the night when he was apprehended in the woods and again in court, as the unsettling man she had seen pacing outside the supermarket just before the attack. A police officer identified Appellant, in court, as the man he had spotted crouching in the dark near the fence of the adjacent property, before the man fled over the fence. This officer further testified that he later recovered the victim's ransacked purse from the location where he had seen the man crouching. Another officer identified Appellant, in court, as the man he had pursued from the fence into the woods. Other officers testified to locating the victim's keys and sunglasses along the path from the supermarket to the woods where Appellant was apprehended. Several officers explained that it was pouring rain by the time they apprehended Appellant, which prevented them from locating a gun in the dense woods.
 {¶ 23} As to the identity of Appellant as the attacker, this Court finds that the State presented a reasonable and coherent version of the events supported by sufficiently believable evidence. Although Appellant's criticism may diminish the victim's credibility as a witness, the record demonstrates that this criticism was proffered to the jury. The victim was present to testify at trial and was subjected to rigorous cross-examination by Appellant's counsel. The State supported the victim's testimony with the testimony of other witnesses. Finally, the court instructed the jury as to its role in evaluating the credibility of each witness.
 {¶ 24} As an alternative argument on appeal, Appellant asserts that the State failed to prove the elements of aggravated robbery or a firearm specification. See R.C. 2911.01(A)(1); R.C.2929.14(D)(1)(a)(ii). Appellant reiterates that no gun was found at the scene or produced at trial, that no one but the victim testified to seeing any gun, that it was dark and raining and the victim needs glasses, and that the State offered no proof at trial that the alleged gun was operable. Appellant cites Statev. Gaines (1989), 46 Ohio St.3d 65, syllabus, for the proposition that "the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense."
 {¶ 25} However, the Ohio Supreme Court expressly modifiedGaines, holding that "such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." State v. Murphy (1990),49 Ohio St.3d 206, syllabus. The Ohio Supreme Court later clarified this rule further, stating that "where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being rendered operable." Thompkins,78 Ohio St.3d at 384. "Thus, the State need not actually recover the firearm used in the offense nor perform tests to prove that it was operable." State v. Bush, 9th Dist. No. 21326, 2003-Ohio-4151, ¶ 8. In the present case, the victim described the gun and testified as to Appellant's brandishing of the gun in perpetrating the robbery. She also testified that she was a former Defense Department employee and had been trained to use a gun. This testimony, if believed, would be sufficient to prove the firearm specification.
 {¶ 26} Upon a review of the record, this Court finds it reasonable that the jury believed the State's version of the events, discounted Appellant's criticism, and convicted Appellant based on the evidence. This Court concludes that Appellant's criticism is inadequate to prove that the jury lost its way or that the conviction constitutes a manifest miscarriage of justice. See Thompkins, 78 Ohio St.3d at 387. Therefore, this Court finds that the conviction is not against the manifest weight of the evidence. See id. This determination is also dispositive of the issue of sufficiency. See Lee at ¶ 18. These assignments of error are overruled.
 B. Third Assignment of Error
"THE TRIAL COURT ERRED BY ALLOWING DR. KRISHNAN TO TESTIFY IN VIOLATION OF LOCAL RULE 14.1."
 {¶ 27} Appellant alleges that the trial court improperly admitted expert testimony because the State failed to identify the expert before trial or provide Appellant with a "report of an expert [that] reflect[s] his opinions as to each issue on which the expert will testify," in accordance with Lorain C.P. Loc.R. 14.1(B). From this, Appellant concludes that his conviction must be reversed. This Court disagrees.
 {¶ 28} Appellant asserts that Lorain C.P. Loc.R. 14.1 applies to his case, and then explains that the text of Lorian C.P. Loc.R. 14.1 is identical to the text of Cuyahoga C.P. Loc.R. 21.1, and thus subject to its associated case law. Next, Appellant cites six civil cases construing Cuyahoga C.P. Loc.R. 21.1, and offers them as authority over the present criminal case, although without any explanation or justification for doing so. Then, from among these six cases, Appellant chooses Jarvisv. Witter, 8th Dist. No. 84128, 2004-Ohio-6628, ¶ 60, which held that a trial court did not abuse its discretion in forbidding an expert from testifying when no report had been filed. From this, Appellant erroneously asserts that Jarvis stands for the proposition that a trial court abuses its discretion by admitting expert testimony when no expert report has been filed in accordance with Lorain C.P. Loc.R. 14.1. This Court finds Appellant's argument unsound.
 {¶ 29} In a criminal case, discovery is governed by Crim.R. 16. See State v. Finnerty (1989), 45 Ohio St.3d 104, 106. "[F]ailure to comply with a discovery request for the names of witnesses does not automatically result in exclusion of their testimony." Id. at 107. "[T]he court may order the noncomplying party to disclose the material, grant a continuance in the case[,] or make such other order as it deems just under the circumstances." Id. See, also, State v. Demars (Mar. 18, 1993), 8th Dist. No. 62148, *7 (Crim.R. 16 "does not prevent the calling of a rebuttal witness where [opposing] counsel is provided the opportunity to voir dire the rebuttal witness and cross-examination of the rebuttal witness is vigorous and complete"). This Court reviews the decision for abuse of discretion. Finnerty, 45 Ohio St.3d at 107. That is, to reverse, this Court must "find that the trial court acted in an unreasonable, arbitrary[,] or unconscionable manner." Id. at 108.
 {¶ 30} In the present case, Appellant challenged the victim's credibility as a witness during cross-examination by questioning the quality of her eyesight. When the victim testified that she had 20/20 vision, Appellant requested and obtained (over the State's objection) introduction of extrinsic evidence, the victim's driver's license, for the purpose of impeachment. Because her driver's license contained a restriction that she wear corrective lenses while driving, Appellant was able to impeach her testimony to the effect that her vision was not 20/20 and that she seemingly had been untruthful in her testimony that it was.
 {¶ 31} In response to this impeachment, the State called as a witness the victim's personal ophthalmologist. The court allowed the ophthalmologist to testify, over Appellant's objection, as a rebuttal witness — both as a fact witness and as an expert witness. As a fact witness, the ophthalmologist testified that the victim had been his patient since 1995, when he performed successful cataract surgery on both of her eyes. He had performed annual exams since 1995, and based on her most recent exam, her vision was 20/20 in one eye and 20/70 in the other. As an expert witness, he testified that this meant that her overall vision was 20/20, because the stronger eye would compensate for the weaker one. Appellant's counsel was offered the opportunity to voir dire the ophthalmologist before his direct testimony, but did not do so. Following direct testimony, the court took a recess so that Appellant's counsel could review the victim's medical file and prepare for cross-examination. Thereafter, Appellant's counsel cross-examined the witness. Appellant did not ask for a continuance, and the trial court could reasonably have concluded that Appellant was willing and able to go forward with the trial. See Finnerty, 45 Ohio St.3d at 108. Based on the record before us, this Court cannot conclude that the trial court abused its discretion in admitting this testimony. Appellant's third assignment of error is overruled.
 III. {¶ 32} Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Whitmore, P.J. Carr, J. concur