[Cite as *State v. Yerra*, 2016-Ohio-632.]

STATE OF OHIO      )
                       )ss:
COUNTY OF LORAIN    )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

STATE OF OHIO

    Appellee

    v.

KISHORE K. YERRA

    Appellant

C.A. No.      14CA010625

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    13CR086827

DECISION AND JOURNAL ENTRY

Dated: February 22, 2016

SCHAFER, Judge.

{¶1} Defendant-Appellant, Kishore Yerra, appeals the judgment of the Lorain County Court of Common Pleas convicting him on three counts of importuning and sentencing him to a three-year term of community control sanctions. For the reasons that follow, we affirm the trial court's judgment.

I.

{¶2} The Lorain County Grand Jury indicted Yerra on four counts of importuning in violation of R.C. 2907.07(D)(2), a felony of the fifth degree. The indictment arose from a series of online conversations that occurred via an Internet chat room between Yerra, who called himself "Sam," and Lorain County Sherriff Detective Dave Lottman, who posed as a 13-year old female named "Lisa." After exchanging basic information, the conversations turned sexual and graphic in nature with "Sam" describing various sex acts that he wanted to perform on "Lisa." These conversations occurred during a span of approximately four months after which police

discovered that "Sam" was Yerra. When police arrested Yerra and questioned him, he denied knowing who "Lisa" was at first. However, later in the interview, Yerra admitted to engaging in the online conversations and that they were sexual in nature. However, Yerra asserted that he thought the person he was conversing with was an adult male posing as a young girl.

{¶3}   Yerra waived his right to a jury trial and the matter proceeded to a bench trial. After receiving evidence, the trial court found Yerra guilty of three counts of importuning. In doing so, it specifically outlined the following regarding Yerra's mental state during the online conversations with "Lisa":

> This [c]ourt has reviewed the transcript in its entirety and notes that [Yerra] on ten (10) separate dates engaged in online chats with the officer posing as a 13 year old girl. On many dates there were multiple chats on each date. * * * During [those chats, Yerra] was informed that the person on the other side of the chat was a 13 year old girl. Furthermore, the Defendant, when referring to the area beneath his chat mate's panties asked if she was "familiar with a razor yet?" [and] on another occasion he indicated that you are so young, so tender" and on another date asked "do you want to be a kid with me or treated like an adult?" Another time [Yerra] stated "I wish you were an adult." [Yerra] called his chat mate "my 13 year old baby." * * *
>
> Based on these comments from [Yerra] and a review of the all the evidence this court concludes that if [Yerra] did not believe that his chat mate was older than 13 but less than 16, then he acted recklessly with respect to his conduct on this issue.

The trial court subsequently imposed a three-year term of community control sanctions.[1] Yerra filed a motion for delayed appeal, which this Court granted, and he has presented one assignment of error for our review.

---

[1] After Yerra's conviction and imposition of sentence, he was deported to Delhi, India. Due to his deportation, the Adult Parole Authority requested that the trial court terminate Yerra's community control sanctions, which it has done.

II.

**Assignment of Error**

**Appellant's convictions for importuning were against the manifest weight of the evidence in violation of Article IV, Section 3, of the Ohio Constitution.**

{¶4}    In his sole assignment of error, Yerra contends that his convictions are against the manifest weight of the evidence.  Specifically, he argues that it was against the manifest weight of the evidence to find that he believed "Lisa" was actually a 13-year old female or was reckless in that regard.  We disagree.

{¶5}    When considering a manifest weight of the evidence challenge, we must review the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  Reviewing courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

{¶6}    Yerra was convicted pursuant to R.C. 2907.07(D)(2), which relevantly provides as follows:

> No person shall solicit another by means of a telecommunications device * * * to engage in sexual activity when the offender is eighteen years of age or older and * * * [t]he other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, [and] the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard[.]

Former R.C. 2901.22(C) stated that "[a] person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."[2]

{¶7} Since Yerra's challenge to his convictions is based on his belief regarding "Lisa's" age, we must consider his subjective state of mind. *See State v. Weir*, 2d Dist. Montgomery No. 22052, 2007-Ohio-6671, ¶ 17. "State of mind can be proved in two ways: through the person's own admission that he or she harbored the state of mind concerned, which is direct evidence of that proposition, or by circumstantial evidence of an objective nature from which the state of mind reasonably may be inferred." *Id*. When considering the evidence offered in this matter, we must be "mindful that direct and circumstantial evidence are of equal probative value[.]" *State v. Spikes*, 9th Dist. Lorain No. 05CA008680, 2006-Ohio-1822, ¶ 21, citing *State v. Jenks*, 61 Ohio St.3d 259, 259 (1991).

{¶8} Detective Lottman testified at trial that he, posing as "Lisa," told Yerra within a minute of the Internet chat's initiation that "Lisa" was only 13 years old. He further explained that Yerra asked a variety of questions regarding "Lisa's" mother, who she described as controlling, and her schoolwork. Detective Lottman also indicated that Yerra never communicated a belief that "Lisa" was actually older than 13 years old:

Q:     Did Mr. Yerra ever ask you or challenge you on your age?

A:     Not that I recall.

The State offered into evidence two pictures that Detective Lottman sent to Yerra of "Lisa." Detective Lottman said that these pictures were provided by a Sheriff Deputy auxiliary who

---

[2] 2014 Am.S.B. No. 361, effective March 23, 2015, amended R.C. 2901.22's definition of recklessness. Since the charged offenses in this matter occurred before Am.S.B. 361's effective date, we rely on the previous statutory definition of recklessness.

consented to their use for this purpose. The pictures were of the auxiliary when she was 13 years old.

{¶9} The State also offered the transcripts of the online conversations into evidence. The transcripts are replete with references to "Lisa's" age and Yerra's acknowledgment of her age. They reflect that "Lisa" told Yerra that she was 13 years old within a minute of the first chat's initiation, which is consistent with Detective Lottman's testimony on this point. In their second chat three days later, Yerra asked, "but how old are you again?" to which "Lisa" again stated "13." After receiving the pictures of "Lisa," Yerra remarked "you need to do a lot of developing" and "you are not a woman yet." After the conversations turned sexual in nature, Yerra stated, "i [sic] wish the age difference will go away," and that "you [Lisa] are so young." Indeed, Yerra acknowledged on two occasions that "Lisa" was not of "legal age" and that consummating the sex acts that he described during the conversations would put him "behind bars." And, due to their age difference, Yerra suggested to "Lisa" that if they ever met in person, they would have to meet somewhere in private so as to avoid detection by the public.

{¶10} Yerra points out that he testified as follows regarding his state of mind during the conversations:

Q:      Now, Deputy Lottman indicated early on in the conversation that he was a 13-year old girl?

A:      Right.

Q:      What was your reaction to that?

A:      I did not believe that. That's the reason why I actually asked the age the next day. Once again, I could not believe that a 13-year old could get into the chat room like that.

Q:      In the course of your conversation with Deputy Lottman, did you ever believe that you – that he was actually a 13-year old girl?

A:   Based on the nature of the – based on the conversation that what we're taught, I always doubted that it was a 13-year old. I always thought that it was somebody much older and probably a male.

Yerra further testified that he was in an "adults-only" chat room when he initiated the contacted with "Lisa" and did not expect a young child to be allowed into the chat room. Based on this evidence in the record, Yerra contends that he was "merely engaging in fictional, unrealistic, and at times repulsive, conversation about sexual acts between adults and minors" with an individual he believed was an adult who was just purporting to be 13 years old.

{¶11} When considering Yerra's testimony, we first note that "the mere fact that [a defendant] offered his own self-serving contradictory testimony does not support a reversal on manifest weight grounds since the trier of fact is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Johnson*, 9th Dist. Lorain No. 13CA010496, 2015-Ohio-1689, ¶ 15. We see no reason to depart from this axiom in this matter since a review of the entire transcript of the online conversations does not support Yerra's assertions regarding his state of mind. Rather, the transcript reflects that Yerra was informed multiple times of "Lisa's" age and that he subsequently referred to their age gap on multiple occasions as well as the legal ramifications of actually consummating the sexual acts that he described.

{¶12} Moreover, Yerra did not only engage in sex-driven conversations with "Lisa," as he argues on appeal. He also offered advice on how she should behave with her mother on multiple occasions. For instance, the following exchange occurred after "Lisa" described an argument that she was having with her mother:

[Yerra]:        be a puppy[3] and say sorry to her [Lisa's mother] for being a kid * * * i [sic] would really love it if you patched up with her now * * * i [sic] know you hate this now . . but you will thank me later * * *

["Lisa"]:        i [sic] do hate it

[Yerra]:        i [sic] really really really really mean it * * * Lisa, whatever it is between us . . i [sic] want to, at the end of the day, be the best human you ever possibly can  be

Additionally, Yerra offered advice on how "Lisa" should treat her father and how to handle her parents' divorce.   These paternalistic messages suggest that Yerra believed that his online conversations were more than "fictional, unrealistic" conversations about sex with an adult male who was merely posing as a female child.

{¶13}   Finally, the cross-examination of Yerra effectively reduced the credibility of his assertions.   Yerra acknowledged that he could not point to "anywhere [in the transcript] where [he] say[s], 'Hey, you know what? I don't really believe you're 13 years old.  I believe you're an adult male[.]'"   The following exchange also occurred regarding Detective Lottman's interview of Yerra:

Q:     Now, when you first met with Detective Lottman here, that was [at Yerra's place of employment], correct?

A:     Yes.

Q:     And he read you your Miranda rights?

A:     Yes.

Q:     Okay.  And he asked you about Lisa and all of that stuff, right?

A:     Yes.

Q:     And you said, no, you don't know anybody by that name, correct?

---

[3] Yerra used multiple pet names for "Lisa," including "baby," "kiddo," and "puppy," all of which connote an understanding that "Lisa" was a child.

A:     Correct.

Q:     So you lied to him, right?  Yes or no.

A:     Yes.

In light of these acknowledgments on cross-examination, we cannot second-guess on appeal the trial court's determination that Yerra's assertions lacked credibility.  *See State v. Jacobs*, 9th Dist. Summit No. 27545, 2015-Ohio-4353,  ¶ 47 (rejecting manifest weight challenge where the credibility of the defendant's testimony was "effectively diminished").

{¶14}  In sum, we cannot conclude that the trial court lost its way when it determined that Yerra either believed "Lisa" was 13 years old or was reckless in that regard.  As a result, we determine that Yerra's convictions are not against the manifest weight of the evidence.  *See Weir*, 2007-Ohio-6671, at ¶ 28 (rejecting the defendant's manifest weight challenge to importuning conviction since "the trial court was free to reject Defendant's testimony concerning his belief [about the other person's age], and there is no basis for us to find that the trial court lost its way in that regard"); *State v. Chance*, 12th Dist. Butler No. CA2005-09-373, 2006-Ohio-3622, ¶ 26-29 (rejecting the defendant's manifest weight challenge to importuning conviction on basis that he believed the other person in chat log was an adult playing out a sexual fantasy where there were "indications that [the girl] had little freedom from parental control" and the defendant "indicated more than once that he was aware that he was treading on legally dangerous ground").

{¶15}  Accordingly, we overrule Yerra's sole assignment of error.

III.

{¶16}  Having overruled Yerra's assignment of error, we affirm the judgment of the Lorain County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

MICHAEL J. GOLDBERG, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.