[Cite as *State v. Lind*, 2023-Ohio-3519.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS | |
| | )ss: | NINTH JUDICIAL DISTRICT | |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.    30416 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT |
| | | ENTERED IN THE |
| GEORGE LIND | | COURT OF COMMON PLEAS |
| | | COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.    CR 20 09 2527 |

DECISION AND JOURNAL ENTRY

Dated: September 29, 2023

SUTTON, Presiding Judge.

{¶1}    Defendant-Appellant George Lind appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    Mr. Lind was indicted on one count of aggravated robbery, in violation of R.C. 2911.01(A), R.C. 2911.01(C), a felony of the first degree ("Count One"). The indictment contained a firearm specification, in violation of R.C. 2941.145(A), because the grand jury found that Mr. Lind "had a firearm on or about his person or under his control while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense."

{¶3}    The charges against Mr. Lind stemmed from an incident on July 7, 2020 at a Huntington Bank in the West Hill neighborhood of Akron. A man wearing a disguise walked into the bank, proceeded to walk behind the teller's counter, and demanded money. The teller later

testified that when the man walked behind the counter, she told him he could not be behind the counter, and he told her "I can if I have a gun." The man demanded money and the teller proceeded to place about $150 in cash and coins in a bag. The man then ran out of the bank and was observed walking across the street into the parking lot of a Walgreens store. The man then began taking off parts of his disguise, including a ball cap, a knit cap, and a tie. All three items were tested for DNA. All three items came back as having Mr. Lind's DNA on them.

{¶4} Mr. Lind was subsequently arrested, and the case proceeded to trial. Before trial, the State supplemented the indictment to include a second count of aggravated robbery in violation of R.C. 2911.01(A), R.C. 2911.01(C) ("Count Two"). In addition to a firearm specification, in violation of R.C. 2941.145(A), Count Two contained a violent career criminal specification, in violation of R.C. 2941.1424(A), and a repeat violent offender specification, in violation of R.C. 2941.149(A). The State dismissed Count One before trial and proceeded to trial on Count Two.

{¶5} A jury was empaneled and returned a guilty verdict on the sole count of aggravated robbery and the firearm specification. The trial court set a hearing on the violent career criminal and repeat violent offender specifications. At that hearing, the parties agreed that the violent career criminal specification did not apply, and the trial court found that the repeat violent offender specification did apply. The trial court then sentenced Mr. Lind to an indefinite term of not less than 11 years and a maximum of not more than 16 years 6 months on the aggravated robbery count, a mandatory three years for the firearm specification, and a mandatory term of one year for the repeat violent offender specification. The sentences for the firearm and repeat violent offender specifications were to run consecutive to the sentence for aggravated robbery.

{¶6} Mr. Lind timely appealed, assigning one error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶7} In his sole assignment of error, Mr. Lind argues that his conviction for the firearm specification was against the manifest weight of the evidence because "the state failed to present any evidence of the use of a firearm or it's operability[.]" For the reasons that follow, we disagree.

Manifest Weight of the Evidence

{¶8} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *State v. Otten,* 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]e are mindful that the jury is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 9th Dist. Medina No. 19CA0053-M, 2020-Ohio-3075, ¶ 20. "This Court will not overturn a conviction on a manifest weight challenge only because the jury found the testimony of certain witnesses to be credible." *Id*.

Firearm Specification

{¶9} R.C. 2941.145(A) specifies an imposition of a three-year mandatory prison term when an offender is found to have "had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense." "[S]uch proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a

position to observe the instrument and the circumstances surrounding the crime." *State v. Spikes*, 9th Dist. Lorain No. 05CA008680, 2006-Ohio-1822, ¶ 25, quoting *State v. Murphy*, 49 Ohio St.3d 206 (1990), syllabus.

{¶10} "[A] firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence." *Thompkins* at 385. "[W]here an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable." *Thompkins* at 384. Thus, the State need not actually recover the firearm used in the offense nor perform tests to prove that it was operable." *Spikes* at ¶ 25, quoting *State v. Bush*, 9th Dist. Summit No. 21326, 2003-Ohio-4151, ¶ 8. "[T]here may be circumstances where the defendant's conduct alone makes clear that he holds a hidden weapon and that he could use it if the victim fails to comply with his instructions." *State v. Knight*, 2d Dist. Greene No. 2003CA14, 2004-Ohio-1941, ¶ 19. *See also State v. Richerson*, 9th Dist. Summit No. 25902, 2012-Ohio-457, ¶ 10 ("A factfinder may infer that a defendant possessed a deadly weapon based on his words and conduct.").

{¶11} At trial, Mr. Lind did not dispute the fact that he was the man in disguise that entered the bank that day. As part of its case, the State presented the testimony of several witnesses and bank employees who were present when Mr. Lind entered the bank. L.M., a bank teller, was the only bank employee behind the counter area when Mr. Lind approached. She testified that she told Mr. Lind that he could not come behind the counter and he responded, "I can if I have a gun." She testified that she became scared and believed Mr. Lind had a gun. When Mr. Lind demanded money and she told him she did not have any money to give him, he responded, "Give me money

before I shoot you." She also testified Mr. Lind said, "Hurry up and give me the money. Hurry up and give me the money before I shoot you."

{¶12} T.M., a customer in the bank at the time of the incident, was next in line to approach L.M. at the counter when Mr. Lind walked behind the counter. T.M. testified that Mr. Lind "had something inside the pocket of his jacket or sweatshirt. At any rate, [Mr. Lind] wanted us to understand that he had a gun." T.M. corroborated the testimony of L.M., testifying that when L.M. told Mr. Lind he could not come behind the counter, Mr. Lind responded, "I can if I have a gun[.]" When asked on cross-examination how he knew whether or not Mr. Lind intended to rob the bank, T.M. said:

> Well, that was the impression I got, and, you know, seeing this gesture of trying to show us or to imply to us that he had a gun in his pocket, I think that's pretty definitive robber-type behavior; that's not ordinary bank customer behavior. * * *

> I did not see a gun. I saw him clearly trying to make us think that he had a gun, and I didn't think I would gain anything by asking him to prove it.

{¶13} J.T., a bank customer, was present when Mr. Lind entered the bank that day. J.T. testified that when L.M. told Mr. Lind he could not come behind the counter, Mr. Lind responded, "Well, I'm the one with the gun." J.T. stated he "saw something that looked like a pistol as [Mr. Lind] walked through the folding doors" and saw "a black handle hanging out of [Mr. Lind's] pocket." Additionally, J.T. testified that after Mr. Lind said he had a gun, Mr. Lind "touched his pocket[,]" in a manner that caused J.T. to "assume * * * he was carrying something, some kind of weapon."

{¶14} In his argument on appeal, Mr. Lind argues that the jury finding was against the manifest weight of the evidence because no firearm was ever recovered and there was no evidence presented that Mr. Lind "brandished or possessed a firearm during the commission of the offense." However, as stated above, the State is not required to recover the weapon. Additionally, while

there was no evidence that Mr. Lind brandished the weapon, possession of the weapon can be proven by circumstantial evidence in circumstances where a "defendant's conduct alone makes clear that he holds a hidden weapon and that he could use it if the victim fails to comply with his instructions." Here, the State presented circumstantial evidence of firearm possession through the testimony of L.M., T.M., and J.T., and after reviewing the record, we cannot determine that Mr. Lind has demonstrated that the jury's finding regarding the firearm specification was against the manifest weight of the evidence.

{¶15} Several witnesses testified to either hearing Mr. Lind imply he had a gun or expressly threatening to shoot. Regarding the credibility of the witnesses, "[c]redibility determinations are primarily within the province of the trier of fact." *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 42. That is because "the [jury] is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." (Alteration sic.) *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist.1993). In doing so, "the jury is free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35.

{¶16} Therefore, the jury's finding regarding the firearm specification was not against the manifest weight of the evidence. Mr. Lind's assignment of error is overruled.

III.

{¶17} Mr. Lind's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CARR, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.